UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| RICHARD JACOBIK, an individual, and CHRISTINE JACOBIK, an individual, <br><br> Plaintiffs, <br><br> v. <br><br> WELLS FARGO BANK, N.A., and DOES 1–100, INCLUSIVE, <br><br> Defendant. | Case No. 17-cv-05121-LB <br><br> **ORDER GRANTING IN PART MOTION TO DISMISS** <br><br> Re: ECF No. 9 |

**INTRODUCTION**

The Jacobiks sued their mortgage lender Wells Fargo in state court after Wells Fargo began foreclosure proceedings on their home.[1] They raise five claims: (1) Wells Fargo violated California's Homeowner Bill of Rights ("HBOR"), by initiating foreclosure proceedings while their first-lien loan-modification application was pending (a process called "dual tracking"), in violation of Cal. Civ. Code § 2923.6(c)–(e), and did not provide them with the net-present-value ("NPV") evaluation that it used to deny the loan modification, in violation of Cal. Civ. Code § 2923.6(f)(3); (2) Wells Fargo did not establish a single point of contact ("SPOC"), in violation of Cal. Civ. Code § 2923.7; (3) Wells Fargo negligently processed their loan-modification

---

[1] Compl. – ECF No. 1 at 14–16 (¶¶ 23–41). Record citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

ORDER – No. 17-cv-05121-LB

application; (4) Wells Fargo's omissions violate California's Unfair Competition Law ("UCL"), Bus. & Prof. Code § 17200 *et seq*; and (5) Wells Fargo failed to contact them before filing a Notice of Default, in violation of Cal. Civ. Code § 2923.5.[2]

Wells Fargo removed the case to federal court based on diversity jurisdiction and moved to dismiss claims one through three for failure to state a plausible claim under Federal Rule of Civil Procedure 12(b)(6).[3] The court grants the motion in part and dismisses the HBOR dual-tracking and "single-point-of-contact" claims and the negligence claim with leave to amend. The court otherwise denies the motion to dismiss.

## STATEMENT

The plaintiffs' home is in Dublin, California. In March 2007, the Jacobiks took out a $631,200 mortgage loan from Wells Fargo,[4] secured by a deed of trust[5] naming Fidelity National Title Insurance Company as the trustee.[6]

In 2012, the Jacobiks "fell behind [on] their mortgage payments for a very short period of time."[7] NBS Default Services recorded a Notice of Default in June 2012 reflecting that the Jacobiks owed $23,003.83 in arrears.[8] Attached to the Notice was Wells Fargo's declaration of due diligence stating that it contacted them, as required by Cal. Civ. Code § 2923.5(g)(2), before recording the notice.[9] The Jacobiks allege, however, that Wells Fargo never contacted them and they did not know about the Notice of Default.[10] The Jacobiks allege that they "were able to make missed payments and to bring their account current," but they do not specific the exact date that

---

[2] *Id.* at 16–23 (¶¶ 42–83).

[3] Motion to Dismiss – ECF No. 9 at 2, 5–8.

[4] Compl. – ECF No. 1 at 14 (¶ 24).

[5] Ex. A – ECF No. 1 at 25–50 (Deed of Trust).

[6] *Id.* at 27.

[7] Compl. – ECF No. 1 at 14 (¶ 27).

[8] *Id.* at 14 (¶ 28) & Ex. B – ECF No. 1 at 51–54 (Notice of Default).

[9] Ex. B – ECF No. 1 at 54.

[10] Compl. – ECF No. 1 at 14–15 (¶¶ 28–29).

ORDER – No. 17-cv-05121-LB 2

they cured the default.[11] Wells Fargo and NBS did not rescind the Notice of Default even after the Jacobiks brought their account current.[12]

In 2014, "due to unforeseen loss of employment and medical expenses," the Jacobiks again defaulted.[13] They made mortgage payments "until their savings were depleted and they could no longer continue the payments."[14] In October 2016, NBS recorded a Notice of Trustee's Sale.[15]

In February 2017, the Jacobiks "experienced [a] significant change in their financial situation and submitted a complete loan modification application" requesting a foreclosure-prevention alternative.[16] Wells Fargo never assigned a single point of contact and instead "shuffled them from one representative to another every time they called to check on the status of [their] application."[17] None of the representatives knew the current status of their application and told them they would "review the file and get back to [them]."[18]

In March 2017, Wells Fargo sent the Jacobiks a "vague and conclusory denial letter," stating that they "did not qualify for a loan modification based on the results of [their] net present value (NPV) evaluation."[19] The Jacobiks appealed the determination and asked Wells Fargo for the data inputs it used to determine their NPV and to evaluate their application.[20] Wells Fargo allegedly never sent them the information and instead "sent another vague and non-responsive" letter informing the Jacobiks that they "still do not meet the requirements for a loan modification."[21]

---

[11] *Id.* at 15 (¶ 30).
[12] *Id.*
[13] *Id.* at 15 (¶ 31).
[14] *Id.*
[15] *Id.* at 15 (¶ 32) & Ex. C – ECF No. 1 at 56–58.
[16] Compl. – ECF No. 1 at 15 (¶ 33).
[17] *Id.* at 15 (¶¶ 34–35).
[18] *Id.* at 15 (¶ 35).
[19] *Id.* at 15 (¶ 36) & Ex. D – ECF No. 1 at 59–64.
[20] Compl. – ECF No. 1 at 15–16 (¶ 37).
[21] *Id.* at 15–16 (¶ 37) (quoting Ex. E – ECF No. 1 at 66 (first page of denial of appeal; the Jacobiks included only the first page of the letter with their complaint)).

**GOVERNING LAW**

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant "fair notice" of what the claims are and the grounds upon which they rest. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not need detailed factual allegations, but "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a claim for relief above the speculative level . . . ." *Id.* (internal citations omitted).

To survive a motion to dismiss, a complaint must contain sufficient factual allegations, which when accepted as true, "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

If a court dismisses a complaint, it should give leave to amend unless the "the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).

**ANALYSIS**

**1. HBOR Claims**

HBOR provides protections for homeowners facing foreclosure. Its purpose is to ensure that borrowers are "considered for, and have a meaningful opportunity to obtain, available loss mitigation options" such as loan modifications or other alternatives to foreclosure. Cal. Civ. Code § 2923.4. It "provides borrowers with a private right of action [against loan servicers and trustees] for [their conduct during foreclosure and loan-modification processes that result in] certain

1 material violations of HBOR." *Penermon v. Wells Fargo Bank, N.A.*, 47 F. Supp. 3d 982, 993 (N.D. Cal. 2014).

The Jacobiks allege that Wells Fargo violated HBOR in three ways: by violating its prohibition against dual-track foreclosure, by failing to provide them with the NPV evaluation used to deny their loan modification, and by failing to assign a single point of contact after they requested a foreclosure-prevention alternative.[22]

**1.l Dual-Track Foreclosure**

First, the plaintiffs allege that Wells Fargo violated HBOR's prohibition of "dual track foreclosure." California Civil Code § 2923.6(c) states that:

> If a borrower submits a complete application for a first lien loan modification offered by, or through, the borrower's mortgage servicer, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale, or conduct a trustee's sale, while the complete first lien loan modification application is pending.

"HBOR attempts to eliminate the practice, commonly known as dual tracking, whereby financial institutions continue to pursue foreclosure even while evaluating a borrower's loan modification application." *Rockridge Trust v. Wells Fargo, N.A.*, 985 F. Supp. 2d 1110, 1149 (N.D. Cal. 2013); *see Foronda v. Wells Fargo Home Mortg.*, No. 14-CV-3513-LHK, 2014 WL 6706815, at *6 (N.D. Cal. Nov. 26, 2014).

The timeline does not support the plaintiffs' claim. Their allegations establish only that they submitted a completed loan-modification application in February 2017, after Wells Fargo recorded the Notice of Default and the Notice of Trustee's Sale.[23] Because Wells Fargo did not record any notices after they submitted their loan-modification application, the Jacobiks do not state a plausible claim. The court dismisses the claim with leave to amend.

**1.2 NPV Evaluation**

Second, the Jacobiks claim that Wells Fargo violated California Civil Code § 2923.6(f)(3) by failing to provide them with the NPV evaluation used to deny their loan modification.[24] (This

---

[22] Compl. – ECF No. 1 at 16–19 (¶¶ 42–63).

[23] *Id.* at 14–15 (¶¶ 28–33).

[24] *Id.* at 17–18 (¶¶ 50–54); Motion to Dismiss – ECF No. 9 at 5–6.

1  claim is part of their first claim, which also alleges dual tracking.)

2  When a mortgage servicer denies a first-lien loan-modification application, it is required to "send a written notice to the borrower identifying the reasons for denial, including . . . , [i]f the denial is the result of a net present value calculation, the monthly gross income and property value used to calculate the net present value and a statement that the borrower may obtain all of the inputs used in the net present value [NPV] calculation upon written request to the mortgage servicer." Cal. Civ. Code § 2923.6(f)(3). Wells Fargo does not contest that it did not provide the NPV but asserts that any claim for its failure is preempted by the National Bank Act ("NBA").[25]

To support its position, Wells Fargo invokes conflict preemption and contends that providing the NPV statement is preempted by the NBA and the Office of the Comptroller of the Currency ("OCC") regulation 12 C.F.R. § 34.4(a)(9). *See Narvasa v. U.S. Bancorp*, No. 15-CV-02369-KJM-EFB, 2016 WL 4041317, at *6 (E.D. Cal. July 28, 2016) (holding that section 2923(6)(f)(3) is preempted under the NBA).[26] 12 C.F.R. § 34.4(a)(9) provides that "a national bank may make real estate loans under 12 U.S.C. 371 and § 34.3, without regard to state law limitations concerning . . . (9) Disclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, solicitations, billing statements, credit contracts, or other credit-related documents . . . ."

Thus, the issue is whether HBOR's provision — requiring a national bank to provide an NPV evaluation when denying a loan-modification application — is a limitation on the bank's making a real-estate loan that is preempted by the NBA.

**1.2.1 NBA and OCC Framework**

Congress created the NBA to "establish a national banking system and to protect banks from intrusive state regulation." *Robinson v. Bank. of Am., N.A.*, No. 11-CV-3939-GHK (JEM), 2011 WL 5870541, at *2 (C.D. Cal. Oct. 19, 2011). The NBA vests federally chartered banks with "all such incidental powers as shall be necessary to carry on the business of banking." 12 U.S.C.

---

[25] Motion to Dismiss – ECF No. 9 at 5–6.
[26] *Id.* at 6.

§ 24. The "business of banking" includes engaging in real-estate lending. *Id.* § 371(a); *Martinez v. Wells Fargo Home Mortg., Inc.*, 598 F.3d 549, 555 (9th Cir. 2010). The OCC, as the "agency charged with administering the [NBA] . . . , has the power to promulgate regulations and to use its rulemaking authority to define the 'incidental powers' of national banks beyond those specifically enumerated in the statute." *Martinez*, 598 F.3d at 555; *see Gutierrez v. Wells Fargo Bank, NA*, 704 F.3d 712, 722 (9th Cir. 2012); *see also* 12 U.S.C. § 93a (authorizing the OCC "to prescribe rules and regulations to carry out [its] responsibilities").

Through its rulemaking process, the OCC has delineated the extent to which the NBA preempts state laws that seek to govern a national bank's real-estate lending power. *See* 12 C.F.R. § 34.4. Section 34.4(a) provides in relevant part:

> (a) Except where made applicable by Federal law, state laws that obstruct, impair, or condition a national bank's ability to fully exercise its Federally authorized real estate lending powers do not apply to national banks. Specifically, a national bank may make real estate loans under 12 U.S.C. 371 and § 34.3, without regard to state law limitations concerning . . .
>
> > (9) Disclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit solicitations, billing statements, credit contracts, or other credit-related documents; . . . [and]
> >
> > (10) Processing, originating, servicing, sale or purchase of, or investment or participation in, mortgages. . . .

12 C.F.R. § 34.4(a)(9), (10).

Like any OCC regulation, the regulation at issue here — 12 C.F.R. § 34.4(a) — "carries the same weight as federal statutes [and] includes interpretation of state law preemption under the [NBA]." *Aguayo v. U.S. Bank*, 653 F.3d 912, 919 (9th Cir. 2011); *Martinez*, 598 F.3d at 556.

While Congress, through the NBA and OCC regulations, granted national banks broad powers to conduct the "business of banking," it also limited the preemptive effect of these powers and did not preempt the entire "field of banking." *Martinez*, 598 F.3d at 555. Specifically, the OCC regulations contain an exception clause regarding a national bank's real-estate lending practices, which provides:

> State laws on the following subjects are not inconsistent with the real estate lending powers of national banks and apply to national banks to the extent that they only incidentally affect the exercise of national banks' real estate lending powers:

ORDER – No. 17-cv-05121-LB      7

> (1) Contracts;
>
> (2) Torts; . . .
>
> (5) Rights to collect debts;
>
> (6) Acquisition and transfer of real property; . . . and
>
> (9) Any other law the effect of which the OCC determines to be incidental to the real estate lending operations of national banks or otherwise consistent with the powers and purposes set out in § 34.3(a).

12 C.F.R. § 34.4(b)(1), (2), (5), (6), (9).

### 1.2.2 Preemption Analysis

"States 'are permitted to regulate the activities of national banks where doing so does not prevent or significantly interfere with the national bank's or the national bank regulator's exercise of its federal powers.'" *Lane v. Wells Fargo Bank N.A.*, No. C 12-04206 WHA, 2013 WL 269133, at *12 (N.D. Cal. Jan. 24, 2013) (quoting *Watters v. Wachovia Bank, N.A.*, 550 U.S. 1, 12 (2007)); *see Watters*, 550 U.S. at 11. To establish that Section 2923.6(f)(3) conflicts with the NBA, and the NBA thus preempts it, Wells Fargo must establish the following: (1) it is impossible to comply with both federal and state requirements, or (2) enforcement of section 2923.6(f)(3) would create an "obstacle" to achieving Congress's objectives in enacting the NBA and would "prevent or significantly interfere with [Wells Fargo's] exercise of its powers" under the NBA. *Barnett Bank of Marion Cnty., N.A. v. Nelson*, 517 U.S. 25, 31–33 (1996). Wells Fargo does not assert that it cannot simultaneously comply with federal and state law. Instead, it effectively relies on the second ground and cites (without any argument or analysis) to *Narvasa*.[27] In *Narvasa*, the district court held that HBOR's NPV disclosure requirement in section 2923(6)(f)(3) was preempted under the NBA and 12 C.F.R. § 34.4(a)(9). *See* 2016 WL 4041317, at *6.

In the context of state consumer-protection laws, courts have observed that "'[s]tate laws of general application, which merely require all businesses (including national banks) to refrain from fraudulent, unfair, or illegal behavior, do not necessarily impair a bank's ability to exercise its . . . powers.'" *Lane*, 2013 WL 269133, at *12 (quoting *Gutierrez*, 2012 WL 6684748, at *12). Here,

---

[27] Motion to Dismiss – ECF No. 9 at 5–6.

ORDER – No. 17-cv-05121-LB          8

section 2923.6(f)(3)'s NPV disclosure requirement is firmly "rooted in California's consumer-protection laws, [which] fall in an area that is traditionally within the state's police powers to protect its own citizens." *Aguayo*, 653 F.3d at 917. It protects consumers by providing a mechanism to help ensure that a lender's decision to grant or deny a loan modification is based upon accurate and transparent data that the consumer can review to better understand the lender's decision. As the Ninth Circuit held in *Aguayo*, "[b]ecause consumer protection law is a field traditionally regulated by the States, compelling evidence of an intention to preempt is required in this area." *See Aguayo*, 653 F.3d at 917 (in areas of law where "'States have traditionally occupied,' like consumer-protection laws, 'the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.'") (quoting *Wyeth v. Levine*, 555 U.S. 555, 565 (2009)) (citations otherwise omitted).

Moreover, courts have narrowly construed the NBA's preemption. *See, e.g.*, *Gutierrez*, 704 F.3d at 726–27 (the NBA did not preempt a challenge to misleading overdraft fee-collection practices); *Lane*, 2013 WL 269133, at *12–13 (in holding that the NBA did not preempt state common-law claims, the court observed that the enforcement of state law would complement, not substitute, for the federal regulatory scheme); *Tamburri v. SunTrust Mortg., Inc.*, 875 F. Supp. 2d 1009, 1020–21 (N.D. Cal. June 21, 2012) (HBOR "does not impose any constraints on banks' lending or servicing powers" and finding no authority to "eviscerate decades of state foreclosure regulation."); *Gerber v. Wells Fargo Bank*, No. 11-CV-1083-PHX, 2012 WL 413997, at *8 (D. Ariz. Feb. 9, 2012) (foreclosure is not within the preempted category of loan servicing; any contrary conclusion would invalidate every element of the state's foreclosure laws); *Ellsworth v. U.S. Bank, N.A.*, 908 F. Supp. 2d 1063, 1078–81 (N.D. Cal. Dec. 11, 2012) (the NBA does not preempt state-law claims challenging a lender's forced placement of backdated flood insurance on real property and its receipt of kickbacks from the insurance company); *Leghorn v. Wells Fargo Bank*, 950 F. Supp. 2d 1093, 1108–14 (N.D. Cal. June 19, 2013) (same); *see also Narvasa,* 2016 WL 4041317, at *6 (holding that the NBA preempts a section 2923(6)(f)(3) HBOR claim).

Looking at the plain language of the OCC's regulation at 12 C.F.R. § 34.4(9), it allows banks to "make real estate loans" without being limited by state-disclosure laws "concerning . . .

(9) Disclosure and advertising, including laws regarding specific statements, information, or other content to be included in credit solicitations, billing statements, credit contracts, or other credit-related documents." The regulation does not expressly address disclosure requirements for denying loan modifications. There is the catchall "other credit-related documents," but it is part of a list about soliciting, making, and collecting credit. Moreover, the NPV disclosure does not obviously stand as an obstacle that would "impair significantly" the execution of the full purposes and objectives of Congress. *See Barnett Bank*, 417 U.S. at 33; *Freightliner Corp. v. Myrick*, 514 U.S. 280, 287 (1995).

In *Narvasa* — the only court to consider whether the NBA preempts section 2923.6(f)(3) — the court, citing the Ninth Circuit's decision in *Martinez* as "analogous," found that California's HBOR's NPV disclosure requirements were preempted by the NBA and 12 C.F.R. § 34.4(a)(9) 2016 WL 4041317 at *5–6.

The Ninth Circuit in *Martinez* held that the NBA preempts state laws requiring a national bank to disclose the costs it incurred for underwriting a refinancing of a home mortgage. 598 F.3d at 557. The borrowers there sued Wells Fargo, challenging the bank's $800 underwriting fee and marked-up tax fees on the ground that they were not reasonably related to Wells Fargo's actual costs of the underwriting and thus violated California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200. *Martinez*, 598 F.3d at 552, 556. Applying conflict preemption, the court held that the NBA preempted the claim. *Id.* at 557–58. It also held that the NBA preempted any challenge to the bank's failure to disclose its underwriting costs. *Id.* at 557 (analyzing 12 C.F.R. § 34.4(a)(9)'s authorization to banks to make real-estate loans without regard to state limitations concerning "disclosure"). In reaching its holding, the *Martinez* court also cited examples where state laws of general application — requiring businesses to refrain from fraudulent, unfair, or unlawful behavior — did not impair a bank's ability to exercise its real-estate lending powers and thus were not preempted by the NBA. *E.g.*, *Jefferson v. Chase Home Fin.*, No. 3:06-CV-06510-TEH, 2008 WL 1883484 (N.D. Cal. Apr. 29, 2008) (a bank misrepresenting its crediting of prepayments to customers' accounts was not preempted); s*ee Martinez*, 598 F.3d at 555–56 (citations omitted).

NPV disclosure is different from the underwriting fees at issue in *Martinez* and arguably is more like the state laws of general application cited in *Martinez* that are not preempted by the NBA. The foundational claims in *Martinez* were connected to underwriting fees charged by banks. The court there found that the claim of "unfair" underwriting fees was intimately related to the process of making real-estate loans, and as such, much more readily seen as preventing or significantly interfering with Congress's grant of power to the national banks. *See* 598 F.3d at 555–57 (as the *Martinez* court noted, to rule otherwise would "ask the court to decide how much an appropriate fee would be" when the OCC had already determined that such pricing was a business decision for each national bank to determine). By contrast, HBOR's section 2923.6(f)(3) NPV disclosure requirements do not impose any obligation on Wells Fargo for pricing or other such materials terms related to the making of any loan or loan modification, and they do not impose any requirement for the actual approval or denial of a loan-modification application.[28]

The court is hesitant to go further in this vein without the benefit of the parties' further input as to whether the NBA preempts the HBOR claim based on the failure to provide NPV input data.[29]

---

[28] Like the HBOR, Congress and the OCC apparently have required disclosure of NPV data for mortgage-loan modifications. *See* Consent Order, *In re Wells Fargo Bank, N.A.*, at art. IX 1(g) (Apr. 13, 2011) (OCC order requiring Wells Fargo to establish an "Action Plan" to improve its residential real-estate mortgage-foreclosure process, which "at a minimum" was required by the OCC to include, among other things, "procedures and controls to ensure that a final decision regarding a borrower's loan modification request [is] . . . communicated to the borrower in writing . . . including the net present value calculations utilized by the Bank, if applicable . . . "); Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank"), 12 U.S.C. § 5219a (mortgage-service providers participating in the Home Affordable Modification Program ("HAMP") required "to provide each borrower . . . whose request for a mortgage modification under [HAMP] is denied with all borrower-related and mortgage-related input data used in any net present value (NPV) analyses"); *cf. Arizona v. United States*, 567 U.S. 387, 401 (2012) (foreclosing parallel state regulation only in field preemption areas). Dodd-Frank and HAMP do not create a private cause of action. But Congress's and the OCC's support for a policy requiring disclosure of the NPV data raises a question about whether there is conflict preemption here. The court wonders too if the Jacobiks are covered by the OCC consent decree.

[29] The Jacobiks did not address the issue in their opposition and instead contended that their HBOR claims should not be preempted by the Home Owner's Loan Act ("HOLA"). *See* Opposition to Motion to Dismiss – ECF No. 18 at 10–12. In its reply, Wells Fargo reiterates that it is not relying on HOLA, but instead asserts preemption under the NBA. *See* Reply in support of Motion to Dismiss – ECF No. 20 at 2–3. In *Aguayo*, the Ninth Circuit stated that "while the regulations [governing preemption under HOLA and under the NBA] are similar in many ways, the OCC has explicitly avoided full field preemption in its rulemaking [under the NBA] and has not been granted full field preemption by Congress." 653 F.3d at 921–22 (internal citations omitted); *cf. Quintero v. Wells Fargo Bank*, N.A., No. 3:13-CV-4937-JSC, 2014 WL 202755, at *3 (N.D. Cal. Jan. 17, 2014) (court noted that by

The most that the court can say at this juncture is that the defendant's arguments do not justify dismissing the claim. The motion to dismiss is to this extent denied without prejudice. The court can address the issue in any new motion to dismiss.

**1.3 Single Point of Contact**

The court dismisses the claim for failure to provide a single point of contact because the plaintiffs do not plausibly allege that the violation was material.

California Civil Code § 2923.7(a) provides that "[u]pon request from a borrower who requests a foreclosure prevention alternative, the mortgage servicer shall promptly establish a single point of contact and provide to the borrower one or more direct means of communication with the single point of contact." A single point of contact may be "an individual or team of personnel each of whom has the ability and authority to perform the responsibilities." Cal. Civ. Code § 2923.7(e). The single point of contact must coordinate the receipt of documents for a loan-modification application and have "access to current information and personnel sufficient to timely, accurately, and adequately inform the borrower of the current status of the foreclosure prevention alternative." *Id.* § 2923.7(b)(2)–(3).

A violation of section 2923.7 must be material to support a claim. *Shupe v. Nationstar Morg., LLC*, 231 F. Supp. 3d 597, 603 (E.D. Cal. Jan. 31, 2017). Courts have held that plaintiffs adequately allege a material violation when they allege that the single point of contact did not answer telephone calls or provide information about missing documents needed to complete a loan-modification application, and when the plaintiff was not considered for all foreclosure-prevention alternatives. *See, e.g.*, *Hixson v. Wells Fargo Bank, N.A.*, No. 14-CV-285-SI, 2014 WL 3870004, at *6 (N.D. Cal. Aug. 6, 2014) (a borrower sufficiently pleaded its claim against a loan servicer for a violation of HBOR's single-point-of-contact requirement because the servicer refused to answer phone calls, did not consider all foreclosure-prevention alternatives, and could

---

adopting the *Barnett Bank* preemption stand in Dodd-Frank, Congress removed any "field" preemption presumption arising from prior OCC regulations and court interpretations). Here, the issue is whether the Jacobiks' claim under § 2923.6(f)(3) is preempted under the NBA, not whether it is preempted under HOLA.

ORDER – No. 17-cv-05121-LB 12

not inform her of any missing documents); *Guillermo v. Caliber Home Loans, Inc.*, No. 14-CV-04212-JSW, 2015 WL 1306851, at *5 (N.D. Cal. Mar. 23, 2015) (the borrowers sufficiently pleaded a claim against a loan servicer for a violation of the single-point-of-contact HBOR requirement because they were not connected with their assigned point of contact for seven attempts over two months implying their contact was either unresponsive or unavailable); *cf. Rockridge Trust*, 985 F. Supp. 2d at 1152 (a borrower did not plausibly plead a claim against a loan servicer for violating the single-point-of-contact provision of the HBOR because the borrower failed to allege any damages incurred as a result of the alleged violation).

The Jacobiks allege that because they did not have a single point of contact, Wells Fargo representatives "could not adequately inform [them] about the current status of [their] application."[30] This is a conclusion. The Jacobiks do not say how the information was inadequate or had a material impact on their application, which was reviewed and decided within weeks of their submission of a completed loan-modification application.[31] They also allege that Wells Fargo "shuffled [them] from one representative to another" and that "each representative kept asking [for] the same information and the same documents [they] previously submitted with no progress."[32] But again, they do not say why this mattered or how it ultimately affected their ability to submit a completed loan application. In sum, their allegations about the lack of a single-point-of-contact do not suggest any material impact on the loan-modification process or the outcome. *See Hendricks v. Wells Fargo Bank*, No. 15-CV-1299-MWF, 2015 WL 1644028, at *8 (C.D. Cal. Apr. 14, 2015). Thus, they do not state a plausible claim. *Id.* The court dismisses the claim with leave to amend.

### 2. Negligence

The plaintiffs claim that Wells Fargo failed to exercise reasonable care in processing their

---

[30] Compl. – ECF No. 1 at 19 (¶ 58).

[31] *Id.* at 15 (¶ 33–36).

[32] *Id.* at 19 (¶ 59).

loan-modification application.[33]

The elements of a negligence claim are: (1) the existence of a duty to exercise due care; (2) breach of that duty; (3) causation; and (4) damage. *See, e.g.*, *Merrill v. Navegar, Inc.*, 26 Cal. 4th 465, 500 (2001). The existence of a duty is a question of law and thus is often suited to a Rule 12(b)(6) disposition. *See Avila v. Citrus Cmty. College Dist.*, 38 Cal. 4th 148, 161 (2006).

The general rule is that lenders do not owe borrowers a duty of care unless their involvement in a transaction goes beyond their "conventional role as a mere lender of money." *See, e.g.*, *Nymark v. Heart Fed. Sav. & Loan Ass'n*, 231 Cal. App. 3d 1089, 1095–96 (1991). But "*Nymark* does not support the sweeping conclusion that a lender never owes a duty of care to a borrower." *Alvarez v. BAC Home Loans Servicing, L.P.*, 228 Cal. App. 4th 941, 945 (2014). A duty may arise even where the lender remains within its "conventional role" of merely loaning money. *Id.* Deciding whether a lender owes a duty in a given case "requires" a court to "balanc[e]" the non-exhaustive factors set forth in *Biakaja v. Irving*, 49 Cal. 2d 647, 650 (1958). *Id.* at 945–46 & n.5. While it is true that the *Biakanja* factors originally were used in the no-privity context, California appellate courts nevertheless have expanded the use of those factors to contexts where there is privity, such as between lenders and borrowers. *See, e.g., id.* at 948–49; *Nymark*, 231 Cal. App. 3d at 1098. Considering the *Biakanja* factors "[t]he California Court of Appeals has thus held that, particularly in light of HBOR, once a mortgagee undertakes to consider a loan-modification request, it owes the borrower a duty to use reasonable care in handling that request." *Johnson v. PNC Mortg.*, 80 F. Supp. 3d 980, 985–86 (N.D. Cal. Feb. 12, 2015); *see also Alvarez*, 228 Cal. App. 4th at 945–52.

The issue is whether the Jacobiks plausibly pleaded a claim for negligence here. The claim is predicated on the failure to provide a single point of contact, failing to provide the NPV, and otherwise not reviewing the plaintiffs' appeal, contacting the plaintiffs before filing the Notice of Default, or rescinding the Notice when the plaintiffs brought their account current.[34] The court

---

[33] *Id.* at 20–21 (¶¶ 64–72).

[34] *Id.* at 20 (¶ 66).

rejected the single-point-of-contact claim because the plaintiffs do not plausibly allege that the violation was material. Without showing why the violation matters, the plaintiffs do not show a breach of the duty of care, causation, or damage. The plaintiffs do not explain how the failure to disclose the NPV valuation was a failure to exercise due care in the processing of their loan-modification application. They also do not explain how Wells Fargo was negligent in processing their 2017 loan modification — the only basis for a claim of negligence — by not contacting them years earlier about the Notice of Default. The complaint's other allegations are conclusions that do not plausibly plead a negligent failure to process the loan application. The court dismisses the claim with leave to amend.

## CONCLUSION

The court dismisses the HBOR claims alleging dual tracking and denial of a single point of contact and dismisses the negligence claim. The dismissal is without prejudice. The plaintiffs must file any amended complaint by December 14, 2017.

This disposes of ECF No. 9.

**IT IS SO ORDERED.**

Dated: November 26, 2017

_____
LAUREL BEELER
United States Magistrate Judge