United States District Court
Northern District of California

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
San Francisco Division

| | |
|---|---|
| RICHARD JACOBIK, et al., <br> Plaintiffs, <br> v. <br> WELLS FARGO BANK, N.A., <br> Defendant. | Case No. 17-cv-05121-LB <br><br> **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S PARTIAL MOTION TO DISMISS** <br><br> Re: ECF No. 37 |

## INTRODUCTION

The Jacobiks sued their mortgage lender Wells Fargo after Wells Fargo began foreclosure proceedings on their home. They raise five claims: (1) Wells Fargo initiated foreclosure proceedings while their first-lien loan-modification application was pending (a process called "dual tracking") and did not provide them with the net-present-value ("NPV") evaluation that it used to deny the loan modification, in violation of the California Homeowner Bill of Rights ("HBOR"), Civil Code § 2923.6; (2) Wells Fargo did not establish a single point of contact ("SPOC"), in violation of HBOR, California Civil Code § 2923.7; (3) Wells Fargo negligently processed their loan-modification application; (4) Wells Fargo's omissions violate California's Unfair Competition Law, California Business and Professions Code § 17200 et seq.; and (5) Wells Fargo failed to contact them before filing a Notice of Default, in violation of HBOR, California Civil Code § 2923.5.

ORDER – No. 17-cv-05121-LB

Wells Fargo moved to dismiss the Jacobiks' original complaint. On November 26, 2017, the court granted Wells Fargo's motion to dismiss in part, dismissing (1) the Jacobiks' Section 2923.6 claims with respect to their dual-tracking allegations (but not with respect to their NPV allegations), (2) the Jacobiks' SPOC claim, and (3) the Jacobiks' negligence claim, and otherwise denying Wells Fargo's motion. *See Jacobik v. Wells Fargo Bank, N.A.*, No. 17-cv-05121-LB, 2017 WL 5665666, at *1 (N.D. Cal. Nov. 26, 2017) (*Jacobik I*). The court gave the Jacobiks leave to file an amended complaint. *Id.*

The Jacobiks have now filed an amended complaint, alleging the same five claims. In response, Wells Fargo has filed a motion for partial dismissal. Wells Fargo does not move to dismiss the Jacobiks' UCL or Section 2923.5 claims, but it does move to dismiss the Jacobiks' first, second, and third claims (their Section 2923.6, SPOC, and negligence claims). For the following reasons, the court grants in part and denies in part Wells Fargo's motion and dismisses the Jacobiks' first and second claims.

## STATEMENT[1]

The factual allegations here are largely the same as those in the original complaint, which the court discussed in its prior order. *See Jacobik I*, 2017 WL 5665666, at *1–2. The court recounts them again briefly here and focuses on the allegations that are new to the amended complaint.

In March 2007, the Jacobiks took out at $631,200 mortgage loan from Wells Fargo on their home in Dublin, California.[2] In 2014, the Jacobiks defaulted on their loan.[3] In February 2017, the Jacobiks "experienced [a] significant change in their financial situation" and submitted an application to Wells Fargo to modify their loan, requesting an alternative to foreclosure.[4]

---

[1] Unless otherwise noted, the fact allegations in the Statement are from the First Amended Complaint ("FAC").

[2] FAC – ECF No. 31 at 2 (¶ 1), 8 (¶¶ 24–25). Record citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[3] *Id.* at 9 (¶ 31). The Jacobiks had also defaulted previously in 2012, but they were later able to make their missed payments and bring their account current. *Id.* (¶¶ 27, 30).

[4] *Id.* (¶ 33).

As they alleged in their last complaint, the Jacobiks allege in their amended complaint that Wells Fargo "failed to assign a single point of contact," that it instead "shuffled [them] from one representative to another every time they called to check on the status of [their] application," and that "none of the SPOCs were aware of the current status of Plaintiffs' file, [and] kept asking the same information and would inform Plaintiffs that they will review the file and get back to [them]."[5] The Jacobiks add a new assertion in their amended complaint that "Plaintiffs believe and thereon allege that because the SPOCs were not aware of the status of Plaintiffs' loan-modification application, and that the SPOCs provided inconsistent information regarding whether documents were received, WELLS did not properly review Plaintiffs' LMA."[6]

In March 2017, Wells Fargo denied the Jacobiks' loan-modification application.[7] Wells Fargo's denial letter stated that the Jacobiks did not qualify for a loan modification based on the result of their net-present-value evaluation.[8] The Jacobiks timely appealed and asked Wells Fargo for the data inputs used to determine their NPV and determine their eligibility for a loan modification.[9] Wells Fargo denied their appeal.[10] Wells Fargo has never provided the Jacobiks with their NPV inputs.[11] The Jacobiks add two new assertions in their amended complaint: (1) "Plaintiffs believe and thereon allege that WELLS did not have the accurate NPV calculations because WELLS lost the documents Plaintiffs sent them as evident by WELLS repeatedly providing inconsistent information regarding whether certain documents were received even though Plaintiff had already sent them"[12] and (2) "[b]ecause of this incompetent conduct by Wells and failure to timely process the LMA, the review process was negligently conducted. As a result

---

[5] *Id.* at 9–10 (¶¶ 34–35).
[6] *Id.* at 10 (¶ 36).
[7] *Id.* (¶ 37).
[8] *Id.*
[9] *Id.* (¶ 39).
[10] *Id.* (¶ 40).
[11] *Id.* at 10–11 (¶¶ 40–41).
[12] *Id.* at 10 (¶ 38).

1 of having to deal with multiple SPOCs who could not accurately and adequately perform their

2 responsibilities under Cal. Civ. Code § 2923.7(b), Plaintiff is informed and believes and thereon

3 alleges that WELLS negligently reviewed them for the loan modification."[13]

4 The Jacobiks allege that their property was scheduled for a foreclosure sale on September 19,

5 2017.[14] (It appears that this sale has not taken place, as the Jacobiks continue to reside in the

6 property.[15])

## STANDARD OF REVIEW

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant "fair notice" of what the claims are and the grounds upon which they rest. *See* Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not need detailed factual allegations, but "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a claim for relief above the speculative level . . . ." *Id.* (internal citations omitted).

To survive a motion to dismiss, a complaint must contain sufficient factual allegations, which when accepted as true, "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and

---

[13] *Id.* at 11 (¶¶ 42–43).

[14] *Id.* (¶ 45).

[15] *See id.* at 8 (¶ 25).

plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

**ANALYSIS**

**1. Net-Present-Value Inputs**

The Jacobiks allege that Wells Fargo failed to provide them with the NPV inputs Wells Fargo used in denying their application, which they claim violates California Civil Code § 2923.6(f)(3). Wells Fargo argues that much of Sections 2923.6, including Section 2923.6(f)(3), has been repealed as of January 1, 2018, and that this repeal necessarily terminates the Jacobiks' claim. The Jacobiks disagree and argue that the NPV provisions in the former Section 2923.6(f)(3) were "saved" by another provision in HBOR — the current version of California Civil Code § 2924.11(b) — which came into effect on the same day that Section 2923.6(f)(3) was repealed (January 1, 2018) and acts as a "savings clause" to the former Section 2923.6(f)(3). For the following reasons, the court finds that the Jacobiks' NPV-inputs claim is not saved under Section 2924.11(b) and therefore grants Wells Fargo's motion to dismiss this claim.

**1.1 Repeals of Statutory Rights and Remedies**

"[A]bsent a savings clause, repeals of statutory enactments must apply retroactively to pending cases." *Palmer v. Stassinos*, 419 F. Supp. 2d 1151, 1155 (N.D. Cal. 2005) (citing Cal. Gov. Code § 9606). As the California Supreme Court has held, "[a]lthough the courts normally construe statutes to operate prospectively, the courts correlatively hold under the common law that when a pending action rests solely on a statutory basis, and when no rights have vested under the statute, a repeal of the statute without a saving clause will terminate all pending actions based thereon." *See id.* at 1156 (internal brackets omitted) (quoting *Governing Bd. of Rialto Unified Sch. Dist. v. Mann*, 18 Cal. 3d 819, 829 (1977)); *accord, e.g.*, *Physicians Comm. for Responsible Med. v. Tyson Foods, Inc.*, 119 Cal. App. 4th 120, 125 (2004) ("The repeal of a statutory right or remedy . . . presents entirely distinct issues from that of the prospective or retroactive application of a statute. A well-established line of authority holds: The unconditional repeal of a special remedial statute

without a saving clause stops all pending actions where the repeal finds them.") (citations and internal quotation marks omitted).[16]

Repeal of a statute terminates all claims under that statute, even for alleged violations of the statute that occurred before the repeal. *See, e.g.*, *Beverly Hilton Hotel v. Workers' Comp. Appeals Bd.*, 176 Cal. App. 4th 1597, 1602, 1611 (2009) (involving injuries were sustained at a time when statute provided for rehabilitation benefits, where court held that repeal of statute in 2009 terminated all statutory claims for injuries even though they occurred before 2009). "If final relief has not been granted before the repeal goes into effect it cannot be granted afterwards, even if a judgment has been entered and the cause is pending on appeal. The reviewing court must dispose of the case under the law in force when its decision is rendered." *Id.* at 1604; *accord, e.g.*, *Alaei v. Rockstar, Inc.*, 224 F. Supp. 3d 992, 999 (S.D. Cal. 2016) ("until it is fully enforced, a statutory remedy is merely an 'inchoate, incomplete, and unperfected' right, which is subject to legislative abolition") (internal brackets omitted) (quoting *Zipperer v. County of Santa Clara*, 133 Cal. App. 4th 1013, 1024 (2005)). "The justification for this rule is that all statutory remedies are pursued with full realization that the legislature may abolish the right to recover at any time." *Palmer*, 419 F. Supp. 2d at 1156 (quoting *Younger v. Super. Ct.*, 21 Cal. 3d 102, 109 (1978)).

But "[w]here the Legislature repeals a statute but intends to save the rights of litigants in pending actions, it may accomplish that purpose by including an express saving clause in the repealing act." *Bourquez v. Super. Ct.*, 156 Cal. App. 4th 1275, 1284 (2007) (citing *Traub v. Edwards*, 38 Cal. App. 2d 719, 721 (1940)). And "'[a]n express saving clause in a repealing statute is not required in order to prevent the destruction of rights existing under a former statute, if the intention to preserve and continue such rights is otherwise clearly apparent.'" *Id.* (quoting *Traub*, 38 Cal. App. 2d at 722). "Thus, if it can be gathered from any act on the same subject passed by the Legislature at the same session that it was the legislative intent that pending

---

[16] "Repeals," in this context, include legislative "sunsets," i.e., statutes enacted from the outset with a built-in expiration date. *Physicians Comm.*, 119 Cal. App. 4th at 126 ("the expiration of a statute [i]s equivalent to repeal of a statutory power") (citing *Beckman v. Thompson*, 4 Cal. App. 4th 481, 489 (1992)).

proceedings should be saved, it will be sufficient to effect that purpose.'" *Id.* (internal brackets omitted) (quoting *Traub*, 38 Cal. App. 2d at 722). "[A]n express saving clause is not necessary because courts have no authority to dictate the form of the expression of legislative intent." *Id.* (citing *In re Pedro T.*, 8 Cal. 4th 1041, 1048–49 (1994)). "Rather, what is required is that the Legislature demonstrate its intention with sufficient clarity that a reviewing court can discern and effectuate it." *Id.* (quoting *Pedro T.*, 8 Cal. 4th at 1049).

### 1.2 Application to the Jacobiks' NPV-Inputs Claim

Section 2923.6(f)(3) was repealed on January 1, 2018, and absent a savings clause, the repeal terminates all claims arising under Section 2923.6(f)(3), including the Jacobiks' claim that Wells Fargo violated HBOR by not providing them with the inputs Wells Fargo used in its NPV calculations. The Jacobiks argue that the simultaneously enacted version of Section 2924.11(b) that became effective January 1, 2018 "saves" the requirements the repealed Section 2923.6(f)(3) imposed on Wells Fargo to provide them with NPV inputs. The court disagrees for the following reasons.

#### 1.2.1 Analysis of the statutory text

First, the legislative language in the pre-2018 version of Section 2923.6(f)(3) and the 2018 version of Section 2924.11(b) is materially different with respect to NPV inputs.

The pre-2018 version of Section 2923.6(f) provides generally that a mortgage servicer that denies a loan-modification application must send "a written notice to the borrower identifying the reasons for denial[.]" Section 2923.6(f)(3) provided more specifically that if the denial was because of an NPV calculation, the mortgage servicer must send the borrower "the monthly gross income and property value used to calculate the net present value[.]" By contrast, the current version of 2924.11(b) imposes a general requirement that a mortgage servicer that denies a loan-modification application must send "a written notice to the borrower identifying with specificity the reasons for the denial." Cal. Civ. Code § 2924.11(b) (2018). But it contains no mention of NPVs or NPV inputs, nor any requirement that the mortgage servicer send the borrower any inputs (like monthly gross income or property value) that were used to calculate NPV. Similarly, the pre-2018 version of Section 2923.6(f)(3) provided that the mortgage servicer must send "a statement

that the borrower may obtain all of the inputs used in the net present value calculation upon written request to the mortgage servicer." The 2018 version of Section 2924.11(b) replaces this requirement with a generalized statement that the mortgage servicer must send "a statement that the borrower may obtain additional documentation supporting the denial decision upon written request to the mortgage servicer" — again, with no mention of the borrower obtaining NPV inputs.

"'As a general rule, in construing statutes, [courts] presume the Legislature intends to change the meaning of a law when it alters the statutory language, as for example when it deletes express provisions of the prior version.'" *Charton v. Harkey*, 247 Cal. App. 4th 730, 741 (2016) (internal quotation marks omitted) (quoting *People v. Mendoza*, 23 Cal. 4th 896, 916 (2000) (internal citations omitted)). "The 'Legislature's repeal of a prior statute together with its enactment of a new statute on the same subject . . . with significant differences in language, strongly suggests the Legislature intended to change the law.'" *Id.* (internal quotation marks and brackets omitted) (quoting *Goodman v. Lozano*, 47 Cal. 4th 1327, 1337 (2010)). The Legislature's choice here to repeal Section 2923.6(f)(3) and its explicit references to NPV inputs and replace it with a statute that makes no mention of NPV inputs suggests that the Legislature did not intend to save Section 2923.6(f)(3)'s statutory rights to NPV inputs after its repeal in 2018.[17]

### 1.2.2 Analysis of the legislative history

Second, the legislative history of both the pre-2018 version of Section 2923.6(f)(3) and the 2018 version of Section 2924.11(b) suggests that Section 2924.11(b) was not intended to act as a savings clause for Section 2923.6(f)(3).

---

[17] The 2018 version of Section 2924.11(b) requires mortgage services to send the borrower "a written notice to the borrower identifying *with specificity* the reasons for the denial" (emphasis added), whereas the lead-in in the pre-2018 version of Section 2923.6(f) only requires mortgage services to provide send "a written notice to the borrower identifying the reasons for denial," without the "with specificity" language. The addition of "with specificity" cannot logically be read as necessarily imposing a requirement on mortgage servicers to provide NPV inputs, given the Legislature's express repeal of the NPV-input statutory language that was found in Section 2923.6(f)(3), and given the maxim that "significant differences in language, strongly suggest[] that the Legislature intended to change the law." *Charton*, 247 Cal. App. 4th at 741.

ORDER – No. 17-cv-05121-LB            8

Both the pre-2018 version of Section 2923.6 and the 2018 version of Section 2924.11(b) were enacted in the same legislative bill, passed by the Legislature in 2012. That bill expressly provided that it "would, *until January 1, 2018*, establish additional procedures to be followed regarding a first lien loan modification application, the denial of an application, and a borrower's right to appeal a denial." 2012 Cal. Stat. ch. 86 (A.B. 278) (emphasis added); 2012 Cal. Stat. ch. 87 (S.B. 900) (emphasis added).[18] The legislative floor analyses of the bill similarly stated that it would "[s]unset various provisions on January 1, 2018. Specifically sunsets the following provisions in the Civil Code: . . . Section 2923.6: Prohibitions on foreclosure filing while loan modification is pending. This section also established appeal process and deadlines and requires a detailed denial notice." Assemb. Floor Analysis, A.B. 278, at 8 (Cal. 2012), *available at* http://leginfo.legislature.ca.gov/faces/billAnalysisClient.xhtml?bill_id=201120120AB278 (last visited Mar. 7, 2018); S. Floor Analysis, A.B. 278, at 14 (Cal. 2012), *available at* http://leginfo.legislature.ca.gov/faces/billAnalysisClient.xhtml?bill_id=201120120AB278 (last visited Mar. 7, 2018). This legislative history suggests that the Legislature intended from the outset to have the procedures it promulgated regarding "the denial of an application" and the right to receive a "detailed denial notice" — namely, the procedures set out in Section 2923.6(f) — sunset and expire effective January 1, 2018.

Contrary to the Jacobiks' argument, Section 2924.11 was not a later-enacted statute designed to "save" the pre-2018 version of Section 2923.6. Instead, both statutes were enacted in 2012 as part of a unitary legislative scheme that was designed from the outset to impose heightened borrower protections for five years — from January 1, 2013 to December 31, 2017 — and to sunset those protections after five years.

### 1.2.3 Analysis of the context of other 2018 changes to HBOR

Third, the context of other 2018 changes to HBOR suggest that Section 2924.11(b) was not intended to act as a savings clause for Section 2923.6(f)(3).

---

[18] The pre-2018 version of Section 2923.6 was enacted in Section 7 of the bill. The 2018 version of Section 2924.11 was enacted in Section 15 of the same bill at the same time.

ORDER – No. 17-cv-05121-LB  9

The pre-2018 version of HBOR gave borrowers whose loan-modification applications were denied a statutory 30-day period to appeal their denial and provide evidence that the mortgage servicer's determination was in error. Cal. Civ. Code § 2923.6(d) (2013) (repealed effective Jan. 1, 2018). The 2018 version of HBOR, however, repeals this 30-day period: under the current version of HBOR, mortgage servicers can proceed with foreclosure once a loan-modification application is denied, without waiting to see if a borrower will appeal. *Compare* Cal. Civ. Code § 2923.6(e) (2013) (repealed effective Jan. 1, 2018) (barring recording a notice of default, notice of sale, or conducting a trustee's sale while borrower's appeal of denial of loan-modification application is pending) *with* Cal. Civ. Code § 2924.11(a) (2018) (no similar protection for appeal). This repeal of an appeal period, with which the protections in Section 2923.6(f) were closely linked, *see* Cal. Civ. Code § 2923.6(f)(1) (2013) (repealed effective Jan. 1, 2018), further indicates that the 2018 HBOR statutes, including the 2018 version of Section 2924.11(b), were not intended to act as savings clauses for the pre-2018 version of Section 2923.6(f).

\* \* \*

For the foregoing reasons, the court holds that the Legislature did not enact a savings clause for the pre-2018 version of Section 2923.6(f)(3). And in the absence of a savings clause, the repeal of Section 2923.6(f)(3) necessarily terminates the Jacobiks' claim.

The court is not unsympathetic to the Jacobiks' position that "it would be inequitable to allow WELLS to avoid not providing specific NPV values just because the statute was repealed as of January 1, 2018," when "these causes of action accrued prior to January 1, 2018, [and] dismissing [their] cause of action even though it accrued prior to the repeal date would allow WELLS and other mortgage servicers to avoid liability as a result of wrongdoings that HBOR was designed to prevent." This, however, is the law in California. *See Beverly Hilton*, 176 Cal. App. 4th at 1607 ("That a[ defendant] might have been able to delay finality of an award in order to take advantage of the repeal . . . does not affect our ruling [of dismissal] in this case."); *L.A. Cty. Fire Dep't v. Workers' Comp. Appeals Bd.*, 184 Cal. App. 4th 1287, 1295 (2010) (same). The California Legislature saw fit to repeal Section 2923.6(f)(3) effective January 1, 2018, thereby terminating claims under that section. Any appeal from any purported "inequity" on this issue must be made to

ORDER – No. 17-cv-05121-LB         10

the Legislature, not the courts.[19] The Jacobiks' claim under Section 2923.6(f)(3) is hereby dismissed.

**2. Trustee's Sale**

The version of Section 2923.6(e)(2) that was in effect from 2013 to 2017 stated that:

> If a borrower submits a complete application for a first lien loan modification offered by, or through, the borrower's mortgage servicer, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale, or conduct a trustee's sale, while the complete first lien loan modification application is pending.

The court need not analyze the effect of the 2018 repeal of this statute, as the Jacobiks' claim fails even under the pre-2018 version. The Jacobiks do not allege that Wells Fargo recorded a notice of default or notice of sale at any point after they submitted their loan-modification application in February 2017, much less when their application was pending. Instead, they argue only that Wells Fargo violated Section 2923.6(e)(2)'s prohibition on "conduct[ing] a trustee's sale, while the complete first lien loan modification application is pending."[20] The Jacobiks do not allege that Wells Fargo actually conducted a trustee's sale. At most, they allege that Wells Fargo scheduled a sale for September 2017 — but scheduling a sale does not constitute conducting a sale for the purposes of Section 2923.6(e)(2). *See, e.g.*, *Sheng v. Select Portfolio Servicing, Inc.*, No. 2:15-cv-0255-JAM-KJN, 2015 WL 4508759, at *2 (E.D. Cal. July 24, 2015) ("[S]imply scheduling or rescheduling a sale does not violate the dual tracking provision.") (citing cases).[21]

---

[19] A bill currently pending in the California Legislature seeks to revive the procedures and protections of the pre-2018 version of Section 2923.6. *See* S.B. 818, 2017–2018 Reg. Sess. (Cal. 2018). The fact that a new bill to revive the pre-2018 version of Section 2923.6 is pending further confirms that current law, such as the current version of Section 2924.11, does not currently do this.

[20] FAC – ECF No. 31 at 11 (¶ 47); Pls.' Opp'n – ECF No. 39 at 5–6.

[21] The cases that the Jacobiks cite on this issue are not applicable here. *Foronda v. Wells Fargo Home Mortgage, Inc.*, No. 14-CV-03513-LHK, 2014 WL 6706815 (N.D. Cal. Nov. 26, 2014) involved a trustee sale that was only stopped on the day of the sale by the borrower filing for bankruptcy at 8:01 a.m. that morning. *Id.* at *6. Nothing similar is alleged here. And *Copeland v. Ocwen Loan Servicing, LLC*, No. CV 13-05708 GAF (FFMx), 2014 WL 304976 (C.D. Cal. Jan. 3, 2014) and *Nardolillo v. JPMorgan Chase Bank, N.A.*, No. 16-cv-05365-WHO, 2017 WL 1493273 (N.D. Cal. Apr. 26, 2017), involved defendants recording notices of sale and did not involve, much less interpret, the separate "conduct[ing] a trustee's sale" portion of Section 2923.6(e)(2). *Copeland*, 2014 WL 304976, at *5; *Nardolillo*, 2017 WL 1493273, at *5.

Nor has this scheduled sale actually occurred, as September 2017 has come and gone, and the Jacobiks remain in the property. As such, even assuming Section 2923.6(e)(2) had not been repealed, the Jacobiks' claim under Section 2923.6(e)(2) must be dismissed for failure to state a claim.

### 3. Single Point of Contact

Unlike Section 2923.6, the SPOC provisions in California Civil Code § 2923.7 were not repealed. But the Jacobiks' SPOC claim nonetheless fails because they do not plausibly allege that any putative violation of Section 2923.7 was material.

As the court previously explained, "[a] violation of section 2923.7 must be material to support a claim." *Jacobik I*, 2017 WL 5665666, at *8 (citing *Shupe v. Nationstar Mortg., LLC*, 231 F. Supp. 3d 597, 603 (E.D. Cal. Jan. 31, 2017)).[22] The court previously dismissed this claim, because the Jacobiks did not allege how the alleged SPOC violation ultimately affected their ability to submit a completed loan application, and their assertions that Wells Fargo representatives "could not adequately inform [them] about the current status of [their] application" were conclusions. *See id.* The Jacobiks do not allege that their loan-modification application was delayed — they acknowledge that it was reviewed and decided within weeks of its submission[23] — and they do not allege how the lack of a SPOC contact had a material impact on their process or outcome.

In their amended complaint, the Jacobiks add new assertions that because the SPOCs were not aware of the current status of their loan-modification application and provided inconsistent information about their application, Wells Fargo must have not reviewed their application properly.[24] But this is a conclusion that does not state a plausible claim that Wells Fargo

---

[22] Section 2923.7 does not itself contain a private right of action. *See, e.g.*, *Taylor v. CitiMortgage, Inc.*, No. 1:17-cv-01231-DAD-JLT, 2017 WL 6055837, at *4 (E.D. Cal. Dec. 7, 2017) (citing cases). Instead, a plaintiff's ability to bring an action under Section 2923.7 is governed by a separate provision, California Civil Code § 2924.12, *see id.*, which provides for a private right of action only for material violations. Cal. Civ. Code § 2924.12(a)(1), (b).

[23] FAC – ECF No. 31 at 10 (¶ 37).

[24] *See id.* at 10 (¶¶ 36, 38), 13 (¶ 58).

committed a material violation of Section 2923.7. *Cf., e.g.*, *Palma v. Select Portfolio Servicing, Inc.*, No. 2:16-cv-00633-KJM-CKD, 2017 WL 1364667, at *6 (E.D. Cal. Apr. 14, 2017) (dismissing SPOC claim because "[plaintiff] does not allege any injury flowing from not being able to speak with the same person or team of persons, and the allegations of the complaint do not plausibly lead to the inference that [plaintiff] was prejudiced as a result of not having a SPOC").

#### 4. Negligence

The Jacobiks' claim that Wells Fargo acted negligently is predicated on their theories that Wells Fargo failed to provide a SPOC, failed to provide them with their NPV inputs, and otherwise did not properly review their loan-modification application or appeal, contact them before recording a notice of default, or rescind the notice of default when they brought their account current.[25] The court previously dismissed the Jacobiks' negligence claim because they failed to allege that any failure to provide a SPOC was material and their remaining allegations were conclusions that did not plausibly plead that Wells Fargo breached a duty of care to the plaintiff that caused them injury. *See Jacobik I*, 2017 WL 5665666, at *9. The court has addressed the Jacobiks' new SPOC allegations above — as discussed there, the Jacobiks' new allegations do not plead a material SPOC violation or a negligence claim. The Jacobiks' other allegations from their original complaint, which they have repeated in this one, also fail to plead negligence. But the court finds that their new allegations that Wells Fargo lost their loan-modification-application documents, and hence did not review their documents correctly — as evidenced by the fact that it (1) made repeated inconsistent statements about what documents it had and had not received from the Jacobiks and (2) is still unable to provide the Jacobiks with their NPV calculations, allegedly because they lost the Jacobiks' documents that had the information that would go into its NPV calculations[26] — just meet the standard for notice pleading of a negligence claim. As the court previously noted, "particularly in light of HBOR, once a mortgagee undertakes to consider a loan-

---

[25] *Id.* at 15 (¶ 69).

[26] *See id.* at 10 (¶¶ 36, 38).

ORDER – No. 17-cv-05121-LB     13

modification request, it owes the borrower a duty to use reasonable care in handling that request." *Jacobik I*, 2017 WL 5665666, at *9 (quoting *Johnson v. PNC Mortg.*, 80 F. Supp. 3d 980, 985–86 (N.D. Cal. Feb. 12, 2015)). The court finds that the Jacobiks' new allegations plead that Wells Fargo breached that duty of reasonable care.

## CONCLUSION

For the foregoing reasons, the court grants in part and denies in part Wells Fargo's motion and dismisses the Jacobiks' first and second claims (their Section 2923.6(e)(2) and (f)(3) and Section 2923.7 claims).

**IT IS SO ORDERED.**

Dated: March 7, 2018

_____
LAUREL BEELER
United States Magistrate Judge